Filed 9/25/15  In re S.H. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re S.H., a Person Coming Under the Juvenile Court Law. | |
| CONTRA COSTA COUNTY CHILDREN AND FAMILY SERVICES BUREAU,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>D.S.,<br><br>      Defendant and Appellant. | A144343<br><br>(Contra Costa County Super. Ct. No. J14-00780) |

D.S. (mother) appeals a juvenile court dispositional order finding that her mental health disability posed a risk of harm to her daughter that necessitated the child's removal from her custody and placement with the child's formerly noncustodial father. (Welf. & Inst. Code, § 361, subd. (c)(1), 361.2, subds. (a), (b)(1).)[1] Mother contends there is insufficient evidence the child was at substantial risk of harm and that the child could have been safely maintained in her home with family maintenance services. We shall affirm the order.

---

[1] All further statutory references are to the Welfare and Institutions Code except as noted.

**Statement of Facts**

*Detention and Jurisdiction Hearings*

On July 19, 2014, mother was taken into custody for psychiatric evaluation and treatment after the police found her wandering in a delusional state with her young daughter, S.H. (§ 5150.) Her daughter, then seven years old, was taken into protective custody and the Contra Costa County Children and Family Services Bureau (county) filed a juvenile dependency petition alleging that mother "suffers from mental health disabilities which impair[] her ability to adequately care and protect the child." (§ 300, subd. (b).)

The county prepared a report summarizing the circumstances of mother's detention. A police officer was summoned to a Concord hotel and told by hotel employees that mother "had been disruptive with both staff and guests and they were afraid she would start a violent confrontation." The officer found mother "wandering the hotel" accompanied by her daughter. Asked what she was doing, mother said she was waiting for her husband, actor and musician Tyrese Gibson, "to finish filming a movie and pick her up." Mother made a number of "bizarre claims" that led the officer to conclude mother was delusional and "disconnected from reality." The claims included mother's assertions that she is the daughter of Joe Jackson (father of the Jackson Five musical group), an Internal Revenue Service agent, was paid $6.2 million by the financial group JP Morgan to care for elderly and handicapped persons at the hotel where she was located, and works for President Obama who "kept watch over her daily from a helicopter." Believing mother to be a danger to herself and her daughter, the officer decided to place mother in a psychiatric facility. Mother agreed "she needed to talk with someone because she 'did not feel right' and 'needed someone's help.' "

A county social worker took custody of the child and interviewed her. The child said the Concord hotel was the second hotel she and mother had stayed in within the last few weeks after their Antioch home had the electricity shut off because "mommy didn't have the money to pay the PG & E." The social worker also conducted interviews of family members. A maternal cousin said she had taken care of the child during the

previous month when mother "had a mental breakdown" and was hospitalized. Mother's adult daughter said mother suffers from mental illness: schizophrenia and bipolar disorder. Mother was interviewed and, after initially denying any mental health issues, said she is bipolar.

A detention hearing was held on July 23, 2014. The court found a substantial danger to S.H.'s well-being if returned to mother and continued the child's placement in foster care. The child's father, Darryl H. (father), came forward shortly after the detention hearing and requested placement of S.H. with him. Father was living in Seattle, Washington with several of his children, including an 11-year-old son who is a full sibling of S.H. Father said he lived with mother and S.H. until the child was two years old and visited S.H. when mother permitted him, which was infrequently.

A contested jurisdictional hearing was held on September 24, 2014. The county reported that, about a week before the hearing, mother was arrested in Seattle for a "domestic dispute" when she tried to remove her son from father's home. Mother had several supervised visits with S.H. in the months between the detention and jurisdiction hearings. Mother was "appropriate and engaging with the child" during several visits but displayed erratic behavior at other times. At her first visit, mother said she brought a bag of clothing for the child but, when the social worker opened the bag, "it was filled with mother's clothing and not the child's." During a supervised telephone call to the child, mother threatened to kidnap S.H. and, at her next scheduled visit, was denied visitation when she appeared in an "unstable mental state." At a visit four days before the jurisdiction hearing, mother left after five minutes stating "that someone was breaking into her home."

Mother failed to appear at the jurisdiction hearing, where she was represented by counsel and her guardian ad litem, who had been appointed a month earlier. The court admitted the county's jurisdictional report and the testimony of a county social worker. The court found "very clear indications of a rather significant mental health illness" and sustained the dependency petition allegation that mother "suffers from mental health

disabilities which impair[] her ability to adequately care and protect the child." (§ 300, subd. (b).)

*Disposition hearing*

A contested disposition hearing was held on January 29, 2015. The county reported that mother was arrested on September 25, 2014, the day after the jurisdiction hearing, "for trespassing and attempting to check children that were not hers out of a local private school." She was hospitalized for psychiatric evaluation and treatment. (§ 5150.) The county stated that mother's behavior during the initial reporting period of September and October 2014 "has been erratic and unpredictable" with mother fluctuating between coherency and "mental crisis." Mother acknowledged to a county social worker that she "gets stressed" but denied having a mental health condition. The social worker reported that mother is unaware of "her fluctuating mental status and how it affects her daughter's emotional, mental, and physical well-being." The social worker noted that three different child welfare agencies had received a total of 17 referrals concerning mother.

The county, in its initial October 2014 report, recommended continued foster care of the child with family reunification services offered to mother. A supplemental report prepared in January 2015 recommended the child be placed with father and the dependency case terminated. Father's home had been approved for placement following a home inspection in December 2014 and the child had a successful home stay with him, after which she expressed her wish to live with him permanently. A social worker reported that the child, when picked up from her visit with father, was "very upset" and said "I don't want to leave." "She tightly hugged her father, brother, and aunt and cried off and on for about two hours." The child later told the social worker "she would miss her mother, but would rather return to her father's care in Washington State." With respect to mother's condition, the social worker wrote that mother recently completed a half-day parenting course, attended several mental health counseling sessions, and was seeking individual therapy.

At the hearing, mother's counsel argued that mother "received the treatment she needs and she's now stable," noting that mother had not been hospitalized in the prior four months. Counsel asked the court to find the county had not met its "burden showing that the child is at risk, and there's an alternative, which would be intensive family maintenance." Counsel for the county, father and the child argued that the child was at substantial risk of harm if returned to mother and asked the court to give father physical custody of the child and terminate jurisdiction. (§§ 361, subd. (c)(1), 361.2, subds. (a), (b)(1).)

The court found clear and convincing evidence of a "substantial danger to [the] child's physical health, or would be if [the] child were returned home, and there are no reasonable means to protect the child [without] removal of physical custody from her mother." The court further found that reasonable efforts had been made to return the child to mother. The court placed the child with father and entered an order for his sole physical custody with joint legal custody in both parents and supervised visitation with mother. Dependency jurisdiction was terminated.

**Discussion**

1. *Substantial evidence supports removal of the child from mother's custody*

To support removal of a child from a parent's physical custody, the record must show clear and convincing evidence that there is a substantial danger to the health, safety, or well-being of the child and that there are no reasonable means of protecting the child without removal. (§ 361, subd. (c)(1); *In re Henry V.* (2004) 119 Cal.App.4th 522, 525, 528-529.) When rendering a removal ruling, the court "shall make a determination as to whether reasonable efforts were made to prevent or eliminate the need for removal of the minor from his or her home" and "shall state the facts on which the decision to remove the minor is based." (§ 361, subd. (d).) The court must consider whether there are less drastic alternatives to removal that will protect the child. (§ 361, subd. (c)(1).) On appeal, a juvenile court's decision to remove a child is reviewed under the substantial evidence standard. (*In re Jason L.* (1990) 222 Cal.App.3d 1206, 1214.) We resolve all conflicts and draw all reasonable inferences in favor of the court's ruling. (*Ibid.*)

5

The record supports a finding that the child was at risk of harm and could not be protected by remaining in mother's custody with provision of services and supervision. Mother's mental illness clearly places the child at risk. While mother had recently taken steps toward treatment, she was not sufficiently stable to protect and provide care for the child at the time of the disposition hearing. Mother has numerous referrals to child protective services and a history of involuntary commitments. The dependency process was initiated in July 2014 when mother was committed for psychiatric observation after wandering around a hotel in a delusional state accompanied by her young daughter. In September 2014, just four months before the disposition hearing, mother was involuntarily committed when she tried to take "children that were not hers out of a local private school." There is no record of mother suffering psychotic episodes after September 2014, but this fact does not demonstrate that mother was sufficiently stable to care for a young child. Mother was reportedly "compliant with medications and appointments" but her treatment consisted of only four group counseling sessions over the previous seven months and a half-day parenting class completed one week before the disposition hearing. A county social worker reported, in October 2014, that mother fails to recognize her "fluctuating mental status and how it affects her daughter's emotional, mental, and physical well-being" and made no adjustment in that opinion when recommending, in a later report, that father assume physical custody. Substantial evidence supports the juvenile court's finding that there was a substantial danger to the health, safety, or well-being of the child and no reasonable means of protecting the child without removing her from mother's custody. (§ 361, subd. (c).)

2. *The juvenile court properly placed the child with father and terminated jurisdiction.*

Where, as here, a child's parents are separated and the child is removed from the physical custody of the parent with whom the child was residing, the juvenile court must place the child with the noncustodial parent if the noncustodial parent requests custody and placement will not be detrimental to the child's well-being. (§ 361.2, subd. (a).) The placement may be temporary or permanent. The court may order temporary placement with the noncustodial parent and provide reunification services to either parent until a

later review hearing for determination of final custody. (*In re Karla C.* (2010) 186 Cal.App.4th 1236, 1243.) Alternatively, the court "may order the noncustodial parent to assume custody of the child, terminate juvenile court jurisdiction and enter a custody order." (*Ibid.*) The choice between these alternatives is for the juvenile court and will not be disturbed absent an abuse of discretion. (*Id.* at pp. 1243-1244.)

Mother does not contend that placement of the child with father would be detrimental to the child. In the juvenile court mother argued for reunification services and appears to claim on appeal that she should have received such services. The court concluded that it was "clearly in the best interest of the child to allow her to reside with her father and her brother [permanently] rather than remain a dependent of the court for a period of time to see whether or not mother will stabilize sufficiently for the child to be returned" to her.

There was no abuse of discretion. Reunification services are offered "for the purpose of facilitating permanent parental custody of the child by one or the other parent. If the previously noncustodial parent can provide a safe and stable permanent home for the child and the evidence establishes that the other parent cannot," reunification services need not be offered to the parent with whom the child previously resided. (*In re Erika W.* (1994) 28 Cal.App.4th 470, 476.) We note that mother's parental rights remain intact— she has joint legal custody and visitation rights and may, if there is a substantial change in circumstances, petition the superior court for a change in physical custody. (Fam. Code, § 3088; *In re Marriage of Carney* (1979) 24 Cal.3d 725, 730-731.) At the time of the disposition hearing, however, the court could reasonably conclude that the child's welfare was best served by placing her in a permanent home with father rather than continuing jurisdiction in the hope that mother might, at some uncertain date, achieve sufficient stability in her mental condition to provide a safe and stable home.

## Disposition

The order is affirmed.

_____
Pollak, Acting P. J.

We concur:


_____
Siggins, J.


_____
Jenkins, J.


A144343

8